UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

MACK TIGGART,

        Plaintiff,              Case No. 2:15-cv-66

v.                                    Honorable R. Allan Edgar

JEFFREY WOODS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

### Factual Allegations

Plaintiff Mack Tiggart is incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory, though the events at issue in the complaint occurred while

he was incarcerated at the Chippewa Correctional Facility (URF). Plaintiff names the following MDOC employees as defendants: URF Warden Jeffrey Woods, Officer S. Campbell, Sergeant (Unknown) Brown, Hearing Investigator John T. Ematinger,[1] and Hearing Officer (Unknown) O'Brien.

According to the complaint, on August 6, 2013, Plaintiff was working as a cart washer for Michigan State Industries (MSI). MSI Supervisor Tom Fegan and inmate Calicut were working on the loading dock approximately 3-5 feet from the cart wash station where Plaintiff was working. Officer Campbell was walking outside the building approximately 100 feet away. Fegan called Plaintiff over to the loading dock to help load the next truck. Fegan was then called away and inmate Clark approached Plaintiff and Calicut and asked them a question. Officer Campbell then motioned for all three of them to come out of the building to where she was standing. They did so, and she took their prison IDs. She asked what each of them had said, and they each answered that they did not understand what she was talking about. She returned inmate Clark's ID and told him he could leave. To Plaintiff and Calicut, she said that they would "read about it!" (Compl., docket #1, Page ID#2.) Later that day, she issued class I misconduct tickets against Plaintiff and Calicut for engaging in sexual misconduct. In her misconduct ticket for Plaintiff, she alleged:

> While conducting a routine check of Zone 1A, I heard from approximately 20ft away prisoner Tiggart . . . state "I deffinatly [sic] take me a bite out of that sweet white ass." This was not in jest and was to degrade and harass this officer.

(*Id.* at Page ID#5.)

In her misconduct ticket for Calicut, she alleged:

---

[1] Plaintiff uses various spellings for Defendant Ematinger's name, including "Ermnatinger" and "Emnatinger." The Court will use the spelling that appears in the caption of the complaint.

> While doing a routine check of Zone 1A, I heard from approximately 20 ft away Calicut . . . state "damn that is a fine white ass and I'd take me a piece of that all night." This statement was not said in jest and was meant to degrade and harass this officer.

(*Id.*)

Sgt. Brown reviewed the misconduct charge with Plaintiff and told him, "I hope this was worth your jo[b]!!" (*Id.* at Page ID#3.) She then prepared a work report terminating Plaintiff from his position.[2] Plaintiff asserts that terminating him prior to the misconduct hearing violated MSI operating procedures, which state that prisoners charged with a class I or II misconduct are to be "laid-in" pending a misconduct hearing on the charge. (*Id.* at Page ID#6.)

Plaintiff asked for a hearing investigator to look into the charge, and Defendant Ematinger was assigned to that role. Plaintiff recounted his version of the events to Ematinger and requested a copy of the security video to support his account. Ematinger obtained statements from Clark and Fegan, who confirmed that Officer Campbell was over 100 feet from Plaintiff's location at the time that Campbell allegedly heard Plaintiff and Calicut's statements, not 20 feet as she claimed in the misconduct tickets. Plaintiff contends that Ematinger did not submit a report of his findings as required by MDOC policy, which deprived Plaintiff of due process.

Hearing Officer O'Brien held a misconduct hearing, found Plaintiff guilty of the misconduct, and sanctioned him with 7 days in "toplock"[3] and 30 days of loss of privileges.

---

[2]Plaintiff claims that this report was "forged" because it does not have the signature of Sgt. Brown's supervisor, which Plaintiff claims was required by MDOC policy. (Compl., Page ID#6.) Obviously, the fact that Brown did not obtain another officer's signature for the report does not render the report a forgery.

[3]From MDOC Policy Directive 03.03.105 ¶¶ MMM, NNN (Apr. 9, 2012):

A prisoner on toplock is restricted to his/her own cell, room, or bunk and bunk area. . . .

A prisoner on toplock shall not leave his/her cell, room, or bunk area for any reason without

Apparently, she did not consider the video evidence, and gave no reason for her failure to do so. Plaintiff claims that she was biased against him because she relied on the account of a fellow prison employee rather than considering the video evidence. In addition, she gave him the most severe sanction possible. Plaintiff requested a rehearing but his request was denied. Plaintiff then filed a petition for judicial review in the Ingham County Circuit Court. That petition was also denied. Plaintiff appealed that decision to the Michigan Court of Appeals, which denied leave to appeal for lack of merit in the grounds presented. Plaintiff attempted to appeal that decision to the Michigan Supreme Court, but the latter court required him to pay an initial partial filing fee of $35.00 in order to proceed with his appeal; Plaintiff did not pay the fee, so his appeal was dismissed.

Based on the foregoing, Plaintiff claims that Defendants deprived him of his constitutional rights to due process and equal protection. He also claims that Defendants failed to comply with prison policies, and that Defendant Woods failed to properly train or supervise his subordinates.

As relief, Plaintiff seeks a declaratory judgment, damages, and expungement of the misconduct conviction from his prison file.

## Discussion

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

---

specific authorization from the appropriate staff person. The prisoner may be deprived of use of his/her television, radio, tape player, and portable media player while on toplock as provided in the facility operating procedure.

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges a number of violations of prison policy in his complaint, but a violation of policy does not suffice to state a claim under § 1983, because it does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Thus, to the extent Plaintiff's claim is based solely on a violation of policy, he does not state a claim under § 1983.

### A. Sergeant Brown

Plaintiff claims that Sergeant Brown improperly terminated him from his prison job after Plaintiff was charged with a misconduct and before he was convicted, which Plaintiff claims denied him due process. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof"l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff does not state a due process claim against Defendant Brown because she did not deprive him of a protected property or liberty interest. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison

job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).  Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).  Under these authorities, Plaintiff does not state a due process claim arising from Defendant Brown's termination of his prison employment.

Plaintiff also asserts that Defendant Brown denied him equal protection.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A state practice that interferes with a fundamental right or discriminates against a suspect class of individuals requires strict scrutiny.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Where, as here, neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies, *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).  "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'"  *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)).

Plaintiff's allegations are wholly conclusory. He does not allege discrimination based on membership in an identifiable group or class; thus, at most he states a "class-of-one" claim, which requires him to show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff alleges no facts from which to infer that Defendant Brown treated similarly-situated prisoners more favorably, or purposefully discriminated against Plaintiff. Defendant's alleged deviation from prison policy is not sufficient, by itself, to state a claim. *Cf. Taylor v. Brown*, 1993 WL 415316, at *1 (6th Cir. Oct. 18, 1993) (alleging, "at most, one isolated incident of uneven enforcement of a prison disciplinary regulation" is not sufficient to state an equal protection claim). In short, Plaintiff's conclusory allegations of discriminatory conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Thus, Plaintiff fails to state a claim against Defendant Brown.

**B.  Hearing Officer O'Brien**

Defendant O'Brien allegedly found Plaintiff guilty of a misconduct without considering relevant video evidence. A prisoner's ability to challenge prison misconduct proceedings depends on whether the misconduct conviction implicated a liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[4] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196

---

[4] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

(Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to a prison misconduct conviction that results in an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Plaintiff contends that he was placed on toplock for 7 days and lost privileges for 30 days. Lockdown time and loss of privileges are not atypical and significant deprivations. *See Green v. Waldren*, No. 99–1561, 2000 WL 876765 (6th Cir. June 23, 2000) (two-day sentence of "toplock" does not amount to an atypical or significant hardship); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (14 days of loss of privileges is not an atypical, significant deprivation). Indeed, such restrictions fall short of the 30 days of segregation found to be insufficient in *Sandin*. *See Sandin*, 515 U.S. at 486. Because Plaintiff's misconduct conviction did not result in an extension of the duration of his sentence or a significant, atypical hardship, his due-process claim fails. *Ingram*, 94 F. App'x at 273.

### C. Officer Campbell

Defendant Campbell allegedly charged Plaintiff with a misconduct, and Plaintiff disputes some of the facts asserted by Campbell in her misconduct report. As indicated with respect to Defendants Brown and O'Brien, however, the misconduct proceedings against Plaintiff did not cause him to be deprived of any constitutionally protected interests. Thus, Officer Campbell's actions did not implicate Plaintiff's right to due process. Moreover, because Plaintiff was found guilty of the charges in a class I misconduct proceeding, he cannot contest any of the facts on which

his conviction is based. A finding of guilt in such a proceeding has preclusive effect against claims dependent on the same issues of fact. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013). Consequently, Plaintiff does not state a cognizable § 1983 claim against Defendant Campbell.

### D. Hearing Investigator Ematinger

Plaintiff claims that Defendant Ematinger deprived him of due process by failing to submit a report of his findings prior to the misconduct hearing. As indicated, however, Plaintiff's misconduct proceedings did not implicate any protected interests; thus, Plaintiff does not state a claim against Defendant Ematinger.

### E. Warden Woods

Plaintiff's only allegation against Defendant Woods is that he failed to ensure that his subordinates complied with prison policy, and failed to instruct his staff to review the video of the incident for which Plaintiff was convicted of a misconduct. For reasons already stated, neither the failure to comply with prison policy nor the failure to review the video deprived Plaintiff of his constitutional rights; thus, Plaintiff's claim is meritless. Moreover, Defendant Woods may not be held liable for the conduct of his subordinates, as § 1983 does not permit liability under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Likewise, § 1983 liability may not be imposed simply because a supervisor denied an

administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has not alleged that Defendant Woods engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against him.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: 6/2/2015                             /s/ R. Allan Edgar
                                            R. ALLAN EDGAR
                                            UNITED STATES DISTRICT JUDGE